## TEXAS & PACIFIC R'Y. CO. vs. A. S. NICHOLSON et al.

### IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Liability of Common Carriers—Statutes Construed.*—Articles 281-3 of the Rev. Stats, merely provide that the carrier's common law liability as such shall commence from the time the bill of lading is signed, and that previous thereto they shall be liable only as warehousemen for goods placed in their depots or warehouses to be thereafter transported. Note a case to which these statutes do not apply.

*Same.*—When a party has signed a bill of lading as a common carrier he so becomes liable, and is responsible as such for all losses not occasioned by the act of God or the public enemy, whether they occur in his warehouses or on his cars or vessels on which they are being transported.

*Same.*—A carrier may enter into a contract without a bill of lading, a part of which is to be performed before the goods are in course of actual transportation, and in so far as such a contract would be binding upon other persons, it would be binding upon him.

₹ *Same.*—See a rule of damages in such a case, where the losses were occasioned by the act of the appellant, and note the proper measure thereof.

Appeal from Tarrant county.

The assignments of error relied on in the brief of appellant's counsel, complain or the action of the court in giving and refusing charges, and of the want of evidence to support the verdict of the jury. The first complaint against the charge is that it holds the railroad company liable as a common carrier of cattle upon a parol agreement to furnish cars, when its liability did not attach until the signing of the bill of lading.

Articles 281, 282 and 283 of the Revised Statutes are cited as sustaining the views of appellant's counsel. These sections merely provide that the carriers common law liability as such shall commence from the time the bill of lading is signed, and that previous thereto they shall be liable only as warehouse men for goods placed in their depots or warehouses to be thereafter transported.

They do not in terms or in effect exempt the carrier from such liabilities as he is subject to in common with all other persons no matter what occupation they may pursue.

Here the effect was not to make the company liable as common carriers whilst the cattle were herded near Colorado City, but merely

to subject it to a liability which an ordinary individual would be made to answer for under the same circumstances.

It is not necessary that a party should be a common carrier in order to make him responsible for violating a contract, nor does the fact that he is such by occupation relieve him from all accountability merely because he has not signed a bill of lading.

When the bill is signed he becomes responsible as a common carrier, and must answer for all losses to the goods not resulting from the act of God or the public enemy, whether they occur in his warehouse where they are stored, or in the cars or vessels upon which they are being transported.

But a carrier may enter into a contract without a bill of lading, a part of which is to be performed before the goods are in a course of actual transportation by him, and in so far as such contract would be binding upon other persons, it will be binding upon him also.

Had the appellees contracted for a sale of the cattle to a person living in Colorado City, the cattle to be received and delivered at that place on 21st May, the price to be their market value then on that day, and the delivery had been attempted and the receipt of the cattle had been refused under like circumstances as attended the present transaction, the vendee would have been liable for all the damages caused by the delay.

Ganson v. Madigun, 13 Wisc., 67; Allen v. Jarvis, 20 Conn.. 38; Dunston v. McAndree, 44 N. Y., 72; 12 Wendell, 493.

And so the railroad company is liable here for like damages caused by the detention of the cattle before they were actually received into their charge, that detention being in consequence of a refusal on their part to receive them according to an agreement previously made with the appellees.

The company could have recovered damages against the appellees had the latter failed to furnish the cattle at the time and place agreed on, and the company had been ready with their cars to receive them.

The responsibilities for breech of contract cannot rest upon one of the parties, whilst the other is to reap its benefits only.

The second objection to the charge relates to that portion of it which instructed the jury that in case there was unreasonable and negligent delay on the part of the defendant in receiving and shipping the cattle to plaintiffs should recover the difference, if any, be-

tween the market value of the cattle at the time they should have arrived at their point of destination and the time when they¹ actually did arrive.

There is no objection made to that portion of the charge that allows as further damages the deterioration of the cattle whilst detained at Colorado City. It will not be necessary therefore for us to fortify by argument or authority a principle so well settled by both as not to be questioned in this appeal.

C. & A. R. R. Co. vs. Erickson, 91 Ill., 613.

Stengem vs. R. R. Co. 65 Mo. 569.

. Bridgman vs. Str. Emily, 18 Iowa, 509.

Smith vs. R. R. Co., 12 Allen, 531.

Ordinarily the damages allowed the injured party upon breach of contract are such as will compensate him for the loss he has suffered.

What will compensate in any given case must defend upon its peculiar circumstances. The rule now generally accepted is to allow such damages as must naturally result from a breach of contract, or as may fairly be considered to be within the contemplation of the parties at the time, of making the agreement.

Applying this rule to the case of railroads who fail to deliver freight within a reasonable time when it is within the knowledge of the company that it is transported for the purposes of sale at the place of delivery, the rule is that the difference between the value at such place at the time of delivery, and at the time when it should have arrived, when the latter is the greater forms one of the items of damages. (King vs. Woodbridge, 34 Vt., 565; 8 & M. R. R. Co. vs. Henry, 14 Ill., 156; Culting et al. vs. G. T. R'y. Co., 13 Allen, 381.)

If there is other deterioration due to the delay of course that must also be taken into consideration. (Bridgman vs. Str. Emily, 18 Iowa 509 ; Stengen vs. R'y. Co. 65 Mo., 569.

The principle which allows the difference in market value between the two periods of time as a measure of damages of course finds its almost universal application in the case of common carriers, as they do the principal if not the entire transportation of the country. But it does not proceed from the extraordinary care required of them by the common law, or any other stringent rules applied to them but is equally binding upon any party who undertakes to do for another a specific thing within a specified time.

A manufacturer who agrees to make and deliver by a specified time certain articles which he knows are to be sold for profit by the party ordering them, must answer for delay to the same extent as the common carrier.

And so in the case already mentioned of a delivery of the cattle at Colorado City to a party who had agreed to receive and pay the market price for them at a specified time, upon breach by the purchaser the same rule of damages would apply to him.

These instances are cited to show that there is nothing in the point made by appellant's counsel that the measure of damages does not apply where the delay accrued through the fault of the R. R. Company before they assumed the attitude of common carriers by signing a bill of lading.

From the authorities cited by them it seems to be claimed that the true measure of damages in the case of a common carrier is the difference between the value of the goods at the point of shipment and that at the point of destination; but this rule applies only in case the goods are never delivered at all, and not to a case where there is merely a delay in transporting them. Had it been shown in this case that the freight money had not been paid, or that there were other means of transporting stock from Colorado city to Chicago, of which the appellees could have availed themselves, the rule of damages would have been modified ; but neither of these facts appear in the case.

It is further urged that the court should have given the special charge asked by defendant. This charge was to the effect that to constitute a legal tender of the cattle they must have been at Color City at the time agreed upon, and must then and there have been offered for shipment under such circumstances as to require no further act on the part of the plaintiffs to make the transfer complete.

As to this it may be said that the proof showed that the cattle were tendered in the manner which custom had established for such tenders at that place, and that a tender in any other way would have been unwise and injurious under the circumstances.

But be this as it may no question of tender can be made in this case. This way rendered unnecessary by the conduct of the company's agent in declining to ship the cattle, which amounted in law to a waiver of the tender. He did not decline because of an improp-

er tender, but because it was simply impossible to receive the cattle for want of cars.

A tender is rendered unnecessary when the party proposing it is informed in advance that it will be useless and will not be accepted. (Rudolph vs. Wagner, 36 Ala., 698 ; Matlock vs. Young, 66 Maine, 459.)

It is complained of the verdict that there no proof that the person who contracted on behalf of the company to receive the cattle was authorized to make such a contract. We cannot concur in this statement.

It was shown by Nicholson that this person (Burns) had been stock agent at Colorado for some length of time; had frequently made contracts of this kind for the shipment of cattle which had always been ratified by the railroad company.

He took orders for cars and received cattle at that point, and superintended the loading and shipping of cattle (and this was done with the knowledge and approbation of the appellant.) This was proved even in stronger terms by another of the witnesses. It conflicted with the evidence of defendants' witnesses but we cannot reverse upon such conflict, more especially as in this case the preponderance of testimony seems to be with the verdict.

Harrison vs. M. & P. R. R. Co. 7 Am. and Eng. R. R. cases 382.

It is also objected to the verdict that it is excessive. The jury seems to have made a very accurate calculation based upon the minimum losses proved or admitted in the evidence going perhaps a few dollars above the exact amount. But they would have been justified under the evidence in finding a larger sum and we do not think that the appellant has any cause of complaint at the amount assessed against it by the jury.

There is no error in the judgment and it is affirmed. Willie, C. J.